## HADDOCK et al. v. SHELTON.

No. 19186. Opinion Filed Jan. 14, 1930.

Rehearing Denied April 1, 1930.

Keaton, Wells, Johnston & Barnes, Eugene S. Wells, and George E. Rider, for plaintiff in error.

J. B. Moore, Green & Pruet, and Anglin & Stevenson, for defendant in error.

ANDREWS, J. The defendant in error, as plaintiff, filed her petition against the plaintiffs in error, as defendants, to quiet the title to certain real estate. Judgment was rendered in favor of the plaintiff, and defendants appealed. The parties, for convenience, will be referred to as plaintiff and defendants.

The allegations of the petition, as amended, essential on this appeal are that plaintiff is the owner of certain real estate; that the land was allotted to certain full-blood Choctaw Indians; that plaintiff is a full-blood Choctaw Indian; that plaintiff inherited the land; that the plaintiff executed a deed to the defendants E. T. Haddock and D. B. Taliaferro, which deed was void and of no effect for the reason that the same was not approved by the county court of Pushmataha county; that a purported order of approval was void for the reason that it was signed by the county judge of Pushmataha county at a time when he was out of Pushmataha county and when the county court was not in session; that the order was signed in the absence of the plaintiff, and plaintiff received for the land in consideration of $1,000, which was wholly inadequate; that plaintiff was induced to execute said deed by reason of the influence of one Ella Thurlow, a near relative, who conspired with the defendants E. T. Haddock and D. B. Taliaferro to defraud plaintiff of her land; that E. T. Haddock deeded the land to M. M. Haddock, who was his wife, and that the defendants Travelers Insurance Company and Atkinson-Warren-Henley Company claimed some right, title, or interest in and to the land. The prayer was that plaintiff's title be quieted; that the purported order of approval be canceled and that defendant be required to account for the rents from the land. Attached to the petition as an exhibit was a general warranty deed dated

September 30, 1922, reciting a consideration of $2,000. The deed was regularly acknowledged before a notary public on September 30, 1922, and was filed for record in the office of the county clerk on October 3, 1922. Indorsed on the deed was the following:

"Presented to me this 30th day of September, 1922, and approved, John Cooke, County Judge, of Pushmataha County, Oklahoma."

There was also attached to the petition as an exhibit a certified copy of an order of approval which was dated September 30, 1922. The certificate thereto was dated September 30, 1922, and was signed "O. L. Blanche, Court Clerk." This instrument was filed for record on the 3rd day of October, 1922.

Each of the defendants filed separate answers, and the defendants Travelers Insurance Company and Atkinson-Warren-Henley Company filed cross-petitions praying for foreclosure of their mortgages. These answers asserted the validity of the conveyance, and the two corporations alleged that they relied solely upon the record title in taking their mortgages.

Plaintiff filed a reply to the answer of the various defendants and answered to the cross-petitions of the defendants.

At the trial plaintiff offered in evidence the deed and the certified copy of the order of approval. The description of the land and the devolution of the title thereto was admitted. Plaintiff then testified to the following: Her parents died when she was young and she was put in school at the age of 5 years, where she remained until ten months after she was 18 years of age. She left there with Miss Thurlow, who came for her in a car and took her to Durant, where they met E. T. Haddock and Mr. Dudley. The next morning Haddock produced the deed to the land and offered her $250 for it. She asked $1,000 and he finally agreed to pay her $1,000 for it. He told her that the land was not any good. She knew nothing of the land and had no business experience. They went from there to Antlers, where they arrived in the evening. They went to the courthouse and found that the county judge was away. They then went to the home of the court clerk, and from there to Boswell, in Choctaw county, where they found the county judge. At first she refused to say much, but Mr. Dudley and Miss Thurlow and Haddock told her not to be scared, and she then talked to the county judge, after which she thought that the judge signed the order approving the deed. This occurred on Saturday, September 30, 1922.

They went to Durant, the court clerk accompanying them. The court clerk wanted to see if the money was in the bank. After the court clerk found that the money was in the bank, the court clerk gave plaintiff the check and gave Haddock the deed and order. Plaintiff and court clerk then went to Madill, and on Monday morning plaintiff cashed the check and drew $200 and Miss Thurlow drew $200. On Monday morning the plaintiff saw E. T. Haddock in his office. Plaintiff never went back to school. In the conversation with the county judge the plaintiff told him she was getting $1,000 for the land. He asked her all about the transaction, after which the county judge took the papers in the house, and she thought that he signed them. Mr. Haddock went with her to the bank on Monday morning to cash the check.

The other testimony shows that she did not cash the check, but drew $200 in cash and deposited $1,800, and eight days after she deposited the check she gave a check to the bank at Wapanucka for $1,800, and the bank gave her credit for $1,800. The check was in the sum of $2,000.

F. M. Dudley, county attorney of Carter county, testified. At the request of the defendant Haddock, he prepared the petition for the approval of the deed and the order of approval. He went with plaintiff to Antlers and found the county judge was away, and he then went to a place outside the county, where he found the county judge. The court clerk kept the check for $2,000 and deed.

At the conclusion of this testimony the defendants demurred, and the demurrers were overruled. The Travelers Insurance Company then introduced its mortgage and second mortgage from the defendant E. T. Haddock, and the Atkinson-Warren-Henley Company introduced the abstract of title on which those companies relied in making the mortgages.

O. L. Blanche, the court clerk, testified that on September 30, 1922, plaintiff, E. T. Haddock, and F. M. Dudley came to Antlers to see him and said that the plaintiff was going to school at Muskogee and that it was important that she get back to school. He telephoned the county judge, who was at Boswell, and made arrangements to meet him there. The petition for approval of the deed was filed with the court clerk, docketed and numbered. The court clerk took that petition with him and the court clerk, Dudley, Haddock, a lady, and plaintiff went to Boswell. When they got to

Boswell, the plaintiff refused to talk to the judge, and the judge went back into the hotel. The lady then told the plaintiff that if she wanted the transaction to go through, she had better talk with the county judge. The plaintiff said she would talk with him. The county judge came out and the plaintiff talked with the county judge. The judge then left the plaintiff and went to where Haddock and Dudley were standing and asked if they had the money, and told them that his rule was to see that the money was paid over. The county judge then told Mr. Blanche to see that the money was paid over to the girl. When they got to Durant, Mr. Blanche called the president of the bank and had the check guaranteed. The check was payable to the plaintiff, but Blanche had Haddock to change it to make it payable to Blanche, and he indorsed it over to the plaintiff. Blanche then gave the deed and a certified copy of the order to Haddock, and that copy included the name of the county judge. The original of the order had not been signed by the county judge at that time. Blanche testified that his reason for including the judge's name in the certified copy was "The judge said he was going to complete the sale, and I was satisfied the judge would approve it." On Monday Mr. Blanche went into the county judge's office at Antlers and presented the order of approval and the county judge signed it, and thereupon Blanche, as court clerk, recorded the order. Blanche testified:

"Q. Now on Monday did you go back to Antlers? A. Yes, sir. Q. What took place? A. I went into his office and he asked me if the money was— By Mr. Moore: I object to what he asked him. By the Court: Sustained. Q. What did the county judge do on Monday morning. By Mr. Moore: Objected to—incompetent, irrelevant and immaterial, trying to impeach the witness. By Mr. Rider: The object of the testimony is to show what was done from October 2, 1922. By the Court: Answer the question. By Mr. Moore: Exception. Q. State what the county judge did with reference to the order on that date. A. He asked me if the money was paid off, and I said no, the actual money wasn't paid, that I called up Tolliver— By the Court: Don't tell the conversation. A. I told him that the money was— By the Court: Don't tell that. A. Was not paid. I went in and there presented the paper and he signed it. By Mr. Moore: We object to all of this evidence. A. I took the original order in and he signed it. Q. Where was he at that time? A. In his office at Antlers. Q. What did you do with the order? A. Recorded it. Q. You recorded it as court clerk? A. Yes, sir."

On cross-examination Blanche testified:

"Q. How came you to make that kind of a certification? A. Well, I talked to the judge and he said he would approve if I would see that the money was paid over, and I delivered the order to Mr. Haddock, and I believed that Mr. Cooke would sign the deed Monday morning. Q. The judge told you at Boswell that he would approve the deed when the check was paid? A. When the money was paid."

The county judge testified:

"Q. Now, Judge Cooke, there has some question come in a suit filed in Jefferson county, Okla., about the matter of the approval of this deed by you. I would like to get you to state, commencing at the beginning, all of your connection with it. A. I was at Boswell, Okla., and the court clerk of this county called me from Antlers to know if I could come to Antlers and approve a full-blood deed. (Plaintiff moves to strike that portion of the answer as to what the court clerk told witness, it being hearsay and incompetent.) Later and about good dark the court clerk, Mr. Haddock, an Indian girl, whom I was told was Mulcy Wall, and some other parties in the car, drove to where I was at the hotel in Boswell. O. L. Blanche was the name of the court clerk. They stated to me that they wanted a full-blood deed approved which had been executed by Mulcy Wall. I examined Mulcy Wall as best I could as to whether or not she fully understood the transaction she was making and if she was fully satisfied with the consideration that she was receiving for the deed, and asked the parties if they had the full amount of the cash in hand to pay the consideration mentioned in said deed. Mulcy Wall was satisfied with the amount of the money that was to be paid her and seemed to understand the transaction fully. Mr. Haddock did not have the cash at that time, Haddock being the man who was making the purchase of the land. I stated to him that I would not approve the deed or any full-blood conveyance until the money was paid to the Indian in my presence. He insisted that the certified check was good at the bank. I explained to him that my rule was invariable and that nothing but the actual money would do. He then asked me if I would agree for him to pay the money to the Indian in the presence of O. L. Blanche, the clerk. I agreed to this to accommodate him, and instructed the court clerk to hold the matter until I came to Antlers, which would be on the following Monday morning, and if, at that time, the money had been paid to Mulcy Wall in his presence, then I would instruct him to deliver the deed and make the order approving it. Following this on Monday morning I went to the courthouse in Antlers and the court clerk stated to me that he had seen Haddock, the purchaser, pay to Mulcy Wall the full con-

sideration mentioned in the deed. I then instructed him to deliver the papers and the deed, with my approval, to the purchaser. Q. This last matter of the instructions to the court clerk took place at the courthouse in Antlers, did it not? A. Yes, sir. Q. What instructions, if any did you give to the court clerk with reference to the original order of approval of this deed on this Monday morning you mentioned at the courthouse at Antlers, Okla? A. To enter it as he did other orders in similar cases."

And on cross-examination he testified:

"Q. Judge, is it a fact that you signed this order at Boswell on Saturday, September 30, 1922? A. I have no recollection of doing so, but I may have. Q. Have you looked at the order to see on what day it was recorded. I now show you the original order filed in the clerk's office and ask you to state what date it shows filed in the clerk's office. A. September 30, 1922. Q. I will ask you, Judge, if it is not fact that you signed this order at Boswell, and that after it was signed you gave the original order with the deed and the check to the court clerk and told him to deliver the deed and order to Mr. Haddock when he ascertained the check was good and the money be paid. A. No, sir. Q. Now, as I understand it from your testimony, you are not positive as to whether this order was signed at Boswell or was sigend at Antlers. A. That is correct."

And on re-direct examination he testified:

"A. I approved the deed in this case on Monday at Antlers. If it was taken from the clerk's hands or given by him to any person until Monday morning at Antlers it was over my instructions, as the deed and order was to not become effective until I knew Mulcy Wall had received the full amount of money that Haddock was to pay her. Plaintiff moves to strike the answer, first, that it is not responsive to the question, and second, it states a conclusion; and third, incompetent, irrelevant, and immaterial. (By the Court: Overruled, to which ruling of the court, Mr. Pruet excepts.) Q. When did you fully satisfy yourself that this deed should be approved? A. The Monday morning following the transaction stated at Boswell. Q. Did you or not on said Monday morning complete the approval of said deed? Plaintiff objects as incompetent, irrelevant, and immaterial. (By the Court: Sustained, exception by Mr. Lee, attorney for defendants.) A. I did."

The vice president of the bank at Madill testified that the plaintiff deposited a check for $2,000, received cash in the sum of $200, and was given credit for $1,800 on October 2, 1922. That she checked it out on October 10, 1922, which was paid to her in the form of a cashier's check payable to the order of the Oklahoma State Bank of Wapanucka.

The trial court found that E. T. Haddock, Ella Thurlow, the plaintiff, F. M. Dudley, and the court clerk went to Boswell in Choctaw county, where they found John Cooke, the county judge of Pushmataha county, who then and there

"* * * signed an indorsement on said deed approving the same, and at the same time and place and as a part of the same transaction signed a formal order attempting to approve said deed. * * * That the said John Cooke delivered said deed and order approving the same to O. L. Blanche, court clerk of Pushmataha county, Okla., and instructed the said O. L. Blanche to deliver said deed and order approving said deed to E. T. Haddock when satisfied that the check would be paid, which was given in payment for said land. That O. L. Blanche, the court clerk of Pushmataha county, Okla., and the said E. T. Haddock proceeded to Durant and that the said O. L. Blanche, court clerk, aforesaid, satisfied himself that the check would be paid and immediately thereafter, in Bryan county, Okla., Saturday night, September 30, 1922, the said O. L. Blanche delivered said deed and order approving the same to E. T. Haddock and duly certified the order approving the said deed, while he, the said O. L. Blanche, was in Bryan county, Oklahoma. The court further finds that no approval of said deed was entered, or signed on Monday morning following the 30th day of September, 1922, and that no order approving the deed aforesaid was ever signed by the said John Cooke, county judge of Pushmataha county, Okla., in Pushmataha county, Okla.; that the order of record in Pushmataha county, a certified copy of which is on file in Jefferson county, as signed by the judge of Pushmataha county while said county judge of Pushmataha county was out of said county in Boswell, Choctaw county, Okla., and that the order now on file in Pushmataha county and the copy certified and delivered to Haddock were dated September 30, 1922, and signed on said day in Choctaw county, Okla., and that said John Cooke was not in Pushmataha county on the 30th day of September, 1922; that the said O. L. Blanche did not return to Antlers until Sunday night October 1, 1922."

From those findings the trial court concluded that the deed and the attempted approval thereof were null and void, and rendered judgment in favor of plaintiff quieting her title.

The governing statute is section 9 of the Act of Congress of May 27, 1908 (35 Stat. 315):

"That the death of any allottee of the Five Civilized Tribes shall operate to re-

move all restrictions upon the alienation of said allottee's land; Provided, that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of the said deceased allottee."

That act of approval of such a deed is not a judicial act nor the exercise of any judicial function. Miller v. Gregory, 132 Okla. 48, 269 Pac. 303; Hope v. Foley, 57 Okla. 513, 157 Pac. 727, and Tiger v. Creek County Court, 45 Okla. 701, 146 Pac. 912. In the last case the court said:

"The conveyance of a tract of land by one person to another is not a judicial act. Ordinarily such transactions are consummated by the grantor and grantee without the intervention of a third person, except perhaps a notary public, whose sole duty is to acknowledge or attest the signatures of the grantors, a purely ministerial act. In the case of a conveyance of his inherited lands by a full-blood Indian, Congress, in addition to the ordinary preliminaries, deemed it necessary to have his deed approved by the county court. This, however, does not change the nature of the transaction. It is still nothing more nor less than a sale of land from one person to another requiring the exercise of business sense and judgment. Congress in the exercise of its power to legislate for the full-blood Indians as a dependent people merely sought, as near as may be, to put the Indian upon an equality with his prospective grantee in the matter of business sense or acumen, to the end that he may have a square deal, or at least be in no greater danger of suffering pecuniary loss by getting the worse of the deal than is ordinarily incident to such a transaction between persons dealing with each other at arm's length."

Applying this rule to the evidence in this case, we find that there was no fraud shown. It is true that the plaintiff was at that time under 19 years of age and that she had had no business experience, but that is the reason why Congress required the approval of such a deed, and the approval of the county court put the plaintiff upon an equality with her grantee.

The record shows that the plaintiff went to the county judge of Pushmataha county and told him that she was selling this land for $2,000 and that she wanted him to approve the sale. The county judge said she "seemed to understand the transaction fully." He indorsed his approval upon the deed and delivered it to the court clerk with directions to hold the matter until the county judge went to Antlers on the following Monday morning, with the condition that if the

money had been paid he would instruct the delivery of the deed and make the order approving it. On Monday morning, at his office in the county seat, he learned that the money had been paid, and he then instructed the court clerk to deliver the papers and the deed and to enter the order of approval.

It appears that the court clerk violated these instructions in that he delivered the deed on Saturday night.

As this court views it, there is just one question in this case and that is whether the conveyance was approved by the county judge at Boswell, in Choctaw county, on Saturday night, or whether the conveyance was approved at Antlers, in Pushmataha county, on Monday morning.

The testimony shows that this county judge did not approve this conveyance at Boswell on Saturday night. The testimony shows that the county judge said he would not approve this conveyance until he knew that the money had been paid. The first information that the county judge had that the money had been paid was at Antlers on Monday morning. In view of the uncontradicted testimony, it is clear that this county judge did not approve this conveyance at Boswell on Saturday night. On the other hand, the record evidence shows that the county judge indorsed his approval on the deed on Saturday night at Boswell. But the testimony shows that he delivered the deed to the court clerk with instructions to hold it until Monday morning. We think the fact that the court clerk delivered the deed in violation of the court's orders before Monday morning is immaterial, and that if this conveyance was approved at all, it was approved at Antlers on Monday morning. The uncontradicted testimony is that on Monday morning the county judge was informed that the money had been paid and that the county judge then told the court clerk to deliver the papers and enter the order of approval. It appears, however, that the order of approval was dated September 30th. The court clerk testified that that order was signed by the county judge on Monday October 2nd. There is no testimony to the contrary. The county judge refused to say that he signed it on September 30th. The question before this court is when and where the conveyance was approved. The county judge says "I approved the deed in this case on Monday at Antlers." And in answer to the question as to when he satisfied himself that the deed should be approved he said: "The Monday morning following the transaction stated at Boswell."

There is nothing in the statute that requires the approval of a deed. The statute requires the approval of the conveyance. The indorsement of approval upon a deed is unnecessary. Snell v. Canard, 95 Okla. 145, 218 Pac. 813. That case involved the approval of a conveyance where the deed was not presented to the court and was without the knowledge of the grantor. No new consideration was paid. The property had greatly advanced in value since the execution of the deed and a suit had been filed to cancel the conveyance. It was there held that none of those things were sufficient to void the approval of the conveyance. Authority is cited therein which, in our opinion, is ample to sustain every point therein decided. This court there said:

"In approving full-blood conveyances the county court does not exercise any jurisdiction of any character conferred by the Constitution or laws of the state, but acts simply as a federal agent, but the county court in its probate capacity is the court which has jurisdiction of the settlement of the estates of deceased allottees and as such is the federal agency designated by the act of Congress, and as such has authority to approve the full-blood conveyance. In its probate capacity, the county court is always in session and has at all times the authority to approve a full-blood conveyance in the exercise of the ministerial function given by the act of Congress."

It was there held that the approval of the county court was not required to be in its capacity other than of a probate court (Malone v. Wamsley, 80 Okla. 181, 195 Pac. 484); that rules of procedure need not be followed (Haddock v. Johnson, 80 Okla. 250, 194 Pac. 1077); that the approval may be without the knowledge or consent of the grantor (Cochran v. Blanck, 53 Okla. 137, 156 Pac. 324); Lasiter, Adm'r, v. Ferguson, 79 Okla. 200, 192 Pac. 197); that the original deed need not be presented to the county court; that the approval is of the conveyance and not of the deed; and that the approval relates back to the date of the deed (Tiger v. Jewell, 90 Okla. 34, 215 Pac. 1062). The federal court in U. S. v. Black, 247 Fed. 942, and Barnett v. Kunkle, 259 Fed. 394, has held that the approval may be anywhere in the county. In Carey v. Bewley, 101 Okla. 235, 224 Pac. 990, it was held that the approval might be without the appearance of the grantor at the time of the approval.

When we apply these rules to the undisputed evidence in this case, we can come to no conclusion other than that the finding of the trial court is clearly against the weight of the evidence.

It is argued that the deed and order were signed with authority to deliver the same to Haddock when the check was paid. This is not supported by any testimony, and the county judge certainly would not deliver an order to the purchaser of the land or authorize anyone else to deliver the order to the purchaser of the land. The order was to be entered on the records of the court. The only thing that was ever delivered to Haddock was the deed and a certified copy of the order. This record shows that the court clerk went from Boswell to Durant, and that he did not go back to Antlers until Monday morning. Evidently he had not entered any order of record in the case. The evidence shows that on Monday morning the county judge directed him to enter the order of record. The court clerk testified that the order was signed on Monday morning, and there was no testimony to the contrary. The county judge and the court clerk each testified that the county judge directed the court clerk to enter the order on Monday morning. The plaintiff in her brief says:

"The court did not accept this theory of the case and specifically holds that the order was not entered on Monday."

That is clearly against, not only the weight of the evidence, but is against all the evidence. Since the court clerk had the papers and was not in the county until Monday morning, the order could not have been entered before Monday morning. It is argued that the entering of the order was a mere ministerial act on the part of the court clerk and that no order to enter the same was necessary. We know of no authority for a court clerk to enter an order which he knows is void. If the contention of the plaintiff is true, this order was void and there was no duty on the part of the court clerk to enter it of record. On the other hand, when the court, on Monday morning, directed its entry, he thereby approved the conveyance.

The evidence shows the approval of the conveyance at Antlers on Monday, October 2, 1922, by the court having jurisdiction thereof.

The order evidencing the approval of the conveyance shows this conveyance to have been approved at Antlers, Okla., on Saturday, September 30, 1922. The plaintiff sought to attack that order by showing that the approval was at Boswell on Saturday, September 30, 1922. In response thereto the

defendants attempted to show that the approval was at Antlers on Monday, October 2, 1922. Since the plaintiff, by parol testimony, attempted to impeach the place of approval as shown in the order of approval, the defendants were justified in attempting to impeach the date of approval as shown in the order of approval. We make this statement to avoid the necessity of discussing the question of whether or not the order of the court may be impeached by parol testimony, on which point we here express no opinion other than to say that if the order can be impeached in this manner by plaintiff it can be sustained in this manner by the defendants.

The judgment of the trial court is reversed, and the cause is remanded, with directions to enter judgment for the defendants herein against the plaintiff and for the cross-petitioners herein against the plaintiff and codefendants.

MASON, C. J., and HUNT, CLARK, CULLISON, and SWINDALL, JJ., concur. LESTER, V. C. J., and RILEY and HEFNER, JJ., absent.