**COTCHA v. FERGUSON et al.**

No. 20883.    Oct. 10, 1933.

A. M. Beets, Allen G. Nichols, George Miller, and L. E. Neff, for plaintiff in error.

J. O. Denton, R. H. Wills, J. H. Crocker, I. L. Lockewitz, H. M. Gray, R. J. Roberts, Ray S. Fellows, and Davis & Patterson, for defendants in error.

ANDREWS, J. This is an appeal from a judgment of the district court of Seminole county against the plaintiff in error, who was the plaintiff in that court, denying her prayer for the recovery of possession of certain land theretofore conveyed by her and to quiet her title thereto.

The plaintiff, a full-blood Seminole Indian, acquired title to the land in question by inheritance from her father, Peter Cotcha. The defendant Walter Ferguson was her guardian. On July 1, 1915, he procured from her a conveyance of the land, the deed therefor being made in the name of the defendant Nellie Ferguson, who was his wife. On February 5, 1917, the plaintiff became of age. On that date J. A. Patterson, Walter Ferguson, and

others went to the home of the plaintiff, and after some conversation with her she executed a deed to the land in question to J. A. Patterson, which deed was later approved by the county judge. That deed was delivered and the consideration therefor was paid. J. A. Patterson thereafter conveyed the property to Walter Ferguson, and Walter Ferguson and his wife executed deeds and leases to the other defendants in error, retaining a one-fourth interest in the mineral rights.

The trial court found that an adequate consideration was paid for the land and that the conveyance was approved by the county judge upon the testimony of the plaintiff and her stepfather and mother. It further found:

"The court is not unmindful of the fact that the guardian must deal at arm's length with his ward's interest not to perpetrate any fraud or make any misstatements in relation to any transactons, and in addition that the truthfulness of the statements must be proven, and there must be a fair consideration for any property he may acquire during the fiduciary relation between the parties, and inasmuch as Sissy Cotcha got all the land was worth at the time it was sold, there could be no legal fraud or actual fraud perpetrated upon her, and inasmuch as the county judge, acting agent appointed by the government, approved this deed, this court approves and finds that issues in favor of the defendant Walter Ferguson and his grantees, both as to the surface and the mineral rights as the pleadings and the proof offered designate, is in rentals, and judgment will be awarded."

In her petition the plaintiff, among other things, alleged that the deed executed on February 5, 1917, was executed by reason of confidence of the plaintiff in Walter Ferguson and his representation to her that it was a paper necessary in the closing of her guardianship.

At the trial the plaintiff testified that Ferguson and Patterson told her on the day she executed the deed in 1917 that they wanted to rent the land; that she understood that they wanted to rent the land, and that she signed the deed with that understanding. She testified that her stepfather was not at the place when they came and that she did not sign the deed until his return in the evening and after consulting with him.

Upon the production of the testimony of the plaintiff taken at the time of the approval of the deed by the county judge, the plea of the plaintiff that she thought the instrument was a paper pertaining to the closing of the guardianship, and her testimony that she thought the instrument was a lease was abandoned. At the hearing for the approval of the deed she testified as follows:

"Q. Sissie, at the time you signed the deed and received your $250 check, did you get that at the time that you executed the deed and that was all that was to come to you? A. Yes, well, that is all right; let the judge approve the deed. Q. Now, with that understanding, are you willing that the court approve the deed at this time? A. Yes, sir; that is all right. Q. You understand in signing this deed when the court approves it you will have no further interest in Peter Cotcha's land? A. Yes, sir. I understand that. Q. It will be satisfactory with you to let the court approve this deed? A. Yes, sir."

In addition to that testimony, her stepfather, Willie Powell, testified before the county judge at that time that he was present at the time of the execution of the deed; that he signed the deed, and that he knew that the plaintiff received $600 for her interest in the land.

The plaintiff relies on the contention that the deed in question was void for the reason that it was taken in the name of Patterson for the benefit of her guardian. While she testified that she had great confidence in Mr. Ferguson at that time, she did not testify that that confidence had any influence over her in the execution of the deed. Such testimony would have been in direct conflict with her pleading. She could scarcely contend in her pleading that she thought that she was signing a paper necessary to the closing of the guardianship and contend in her testimony that she was induced to execute a deed by reason of her confidence in her guardian or that she thought that she was signing a lease.

While it is true that the guardian had not been discharged at the time of the execution of the deed, it appears from the record that he had filed his final account sometime before and that the guardianship case had been marked closed, evidently on the theory that she became of age at an earlier date.

An applicable rule is stated in Daniel v. Tolon, 53 Okla. 666, 157 P. 756, in three statements, as follows:

"Courts watch with great jealousy transactions of guardians with their wards, or any dealings between them affecting the estate of the ward. From the confidential relations between them, it will be presumed that the ward was acting under the influence of the guardian, and all transactions

between them prejudicially affecting the interests of the ward will be held to be constructively fraudulent. This presumption extends to transactions between them after the guardianship has ended, but where the influence remains, and the control and dominion over the former ward's property still continues.

"The equitable rules concerning dealings between guardian and ward are very stringent. The relation is so intimate, the dependence so complete, the influence so great, that any transactions between the two parties, or by the guardian alone, through which the guardian obtains a benefit, entered into while the relation exists, are in the highest sense suspicious; the presumption against them is so strong that it is hardly possible for them to be sustained. The general doctrine of equity applies to the parties after the legal condition of guardianship has ended, and as long as the dependence on one side and influence on the other presumptively or in fact continues. This influence is presumed to last while the guardian's functions are to any extent still performed, while the property is still at all under his control, and until the accounts have been finally settled. Any conveyance, purchase, sale, contract, and especially gift, by which the guardian derives a benefit at the expense of the former ward made after the termination of the legal relation, but while the influence lasts, is presumed to be invalid and voidable. The burden rests heavily upon the guardian to prove all the circumstances of knowledge, free consent, good faith, absence of influence, which alone can overcome the presumption. * * *

"While equity does not deny the possibility of valid transactions between parties, where a fiduciary relationship exists, yet because every such relation implies a condition of superiority held by one of the parties over the other, in every transaction between them by which the superior party obtains a possible benefit, equity raises a presumption against its validity, and casts upon that party the burden of proving affirmatively his compliance with equitable requisites, and of thereby overcoming the presumption."

The effect of that decision is that a presumption of undue influence exists under the circumstances stated therein.

In Stumpf et ux. v. Montgomery, 101 Okla. 257, 226 P. 65, this court, speaking of the weight or effect of a presumption as evidence, referred to the case of McCullough v. Harshman, 99 Okla. 262, 226 P. 555, and said:

"The rule announced in the Harshman Case is the true rule. A presumption cannot in itself possess probative weight, but merely necessitates evidence to meet the prima facie case which it creates. When evidence is introduced rebutting the presumption, the presumption disappears, leaving in evidence the basic facts which are to be weighed."

It cited decisions from other courts sustaining that rule. That rule has found approval in later decisions of this court. Kramer v. Nichols-Chandler Home Bldg. & Brokerage Co., 103 Okla. 208, 229 P. 767; Campbell v. Kirkpatrick, 120 Okla. 57, 249 P. 508, and St. John v. Ivers, 124 Okla. 215, 255 P. 706.

Under those rules, if there was a presumption that the deed in question was invalid and consequently voidable, under the facts shown by the record in this case, that presumption was rebuttable. An applicable statute is section 9420, O. S. 1931, wherein undue influence is defined, as follows:

"First. In the use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him.

"Second. In taking an unfair advantage of another's weakness of mind; or,

"Third. In taking a grossly oppressive and unfair advantage of another's necessities or distress."

There is nothing in the record to show that either the second or third provision is applicable. In amplification of that rule we quote from Black on Rescission and Cancellation (2d Ed.) sec. 242, as follows:

"To set aside any transaction on the ground of undue influence, it must be shown not only that such influence existed and that it was exercised, but also that it was exercised effectively; that is, that it was the efficient cause in bringing about the transaction complained of. The influence which the law denounces as undue influence over a testator must be such as to destroy his free agency, and amounts to moral or physical coercion'"

—and from In re Cook's Estate, 71 Okla. 94, 175 P. 507, as follows:

"Undue influence, such as will invalidate a will, must be something which destroys the free agency of the testator at the time when the instrument is made, and which, in effect, substitutes the will of another for that of the testator. It is not sufficient that the testator was influenced by the beneficiaries in the ordinary affairs of life, or that he was surrounded by them and in confidential relations with them at the time of its execution."

To the same effect are the decisions in Kindt v. Parmenter, 83 Okla. 116, 200 P. 706; Nelson v. York, 87 Okla. 210, 209 P. 425; McClure v. Kerchner, 107 Okla. 28, 229 P. 589, and Myers v. Myers, 130 Okla. 184, 266 P. 452.

It will be noted that, under the provisions of the statute, undue influence exists only where the influence asserted is for the purpose of obtaining an unfair advantage. The trial court found that a fair consideration for the property was paid. We cannot understand how the rights of the plaintiff could in any way be prejudiced by the fact that the conveyance was intended to be for the benefit of Mr. Ferguson. It is clear that if a fair consideration for the land was paid, the transaction would not be voidable merely because the conveyance was made for the benefit of Mr. Ferguson. If the conveyance would have been good if it had been made to Mr. Patterson for his own use, then it must be sustained although it was made to Mr. Patterson for the benefit of Mr. Ferguson. We cannot find that the plaintiff was imposed on when, as shown by her own testimony, she acted in making the deed on the advice of her stepfather.

In Haddock v. Shelton, 142 Okla. 202, 286 P. 329, this court held:

"The purpose of section 9 of the Act of Congress of May 27, 1908, requiring the approval of a conveyance by a full-blood Indian heir, was to put the Indian upon an equality with the prospective grantee in the matter of business sense or acumen, to the end that he may ·have a square deal, or at least be in no greater danger of suffering pecuniary loss by getting the worse of the deal than is ordinarily incident to such a transaction between persons dealing with each other at arm's length."

To the same effect was the holding of this court in Critchlow v. Bacon, 142 Okla. 168, 285 P. 968. See, also, Watashe v. Tiger, 88 Okla. 77, 211 P. 415, and Harjo v. Empire Gas & Fuel Co., 28 Fed. (2d) 596.

We have carefully reviewed the evidence as to the value of the land at the time of the conveyance in 1917, and we cannot find from the record that the finding of the trial court that an adequate consideration therefor was paid should be disturbed.

We, therefore, conclude that if there was a presumption of undue influence of Mr. Ferguson over the plaintiff at the time of the execution by her of the deed of February 5, 1917, by reason of his acts and conduct and his relationship to her, that presumption was rebutted, overcome, and destroyed; first, by the fact that that influence was not the efficient cause in bringing about the transaction, as shown by her evidence that she did not rely on the statements of Mr. Ferguson, that she refused to execute the deed until she consulted with her stepfather, and that prior to the execution of the deed she had the independent advice of her stepfather; second, that there was no unfair advantage taken of her, as shown by the fact that an adequate consideration was paid to her for the land; and third, that at the time of the approval of the deed by the county judge, without which approval it would have been of no effect, she was represented by the county judge, and consequently was on a legal equality with both Mr. Patterson and Mr. Ferguson.

We cannot refrain from calling attention to the fact that this plaintiff waited more than ten years after executing this deed before commencing this action. While that fact does not bar a right of action, that fact, together with her mistaken view as expressed in her pleading, her testimony, and the other facts shown by the record, leaves little to support the presumption upon which she relies to destroy the effect of the deed which she executed, which was approved by the county judge, and for which she was adequately compensated.

The judgment of the trial court is in all things affirmed.

CULLISON, V. C. J., and SWINDALL, McNEILL, OSBORN, BAYLESS, BUSBY, and WELCH, JJ., concur. RILEY, C. J., dissents.