This is an appeal from the judgment of the district court of Pontotoc county, denying the contest after probate of the last will and testament of B.F. Ritter, deceased, who died in Pontotoc county, December 26, 1933. On the 27th day of January, 1934, the county court, of Pontotoc county admitted the will in question to probate and directed that letters testamentary issue to Myrtle Irwin, the person named as executrix. On January 25, 1935, plaintiffs in error filed their petition of contest of said will after probate. The county court denied the contest and sustained the will. The contestants appealed to the district court, which court, upon trial de novo, sustained the demurrer to the evidence introduced by contestants. From that judgment, contestants appeal to this court. The parties will be referred to herein as contestants and proponent, as they appeared in the trial court.
The evidence disclosed that the testator, a single man, died in Pontotoc county, at the age of about 69 years; that he had never been married, and therefore left no issue. That proponent, a niece, had lived with the testator for a number of years. She is the chief beneficiary under the will; bequests of the sum of $1 each having been made to the brothers of the deceased, both of whom are now deceased. The will provides:
"I have a number of nieces and nephews, children of deceased sisters, but my beloved niece, Myrtle Irwin has been of help, aid and assistance to me and it is my desire that she have all my property, save and except that which has been herein otherwise bequeathed, and I do hereby give and bequeath to the said Myrtle, Irwin, all the property both real and personal of which I may die seized and possessed. And it is my will that at my death, she take possession of my home place and all real estate connected therewith, and all buildings, and improvements thereon, together with all the livestock and personal property in connection therewith."
It is agreed that the only question involved in this appeal is whether at the time of the execution of the will the testator was free from duress, menace, fraud, or undue influence.
Contestants' testimony, generally, is to the effect that at the time of the execution of the will, and for some time prior thereto, testaor had been suffering from high blood pressure and, for about a year before his death, had suffered a paralytic stroke; that for several years preceding his death, proponent had transacted considerable business for the deceased. That on one occasion testator had complained of treatment manifested towards him by proponent's husband. That upon several occasions proponent had indicated her desire that testator execute a will. That on one or more occasions proponent had stated that the bank holding a mortgage *Page 310 
on testator's farm had refused to extend the mortgage unless testator execute a will. That on one occasion proponent had stated that she was going to have deceased "make her a will".
Another witness testified that in a conversation with testator a short time before his death testator had stated that Myrtle (meaning the proponent) drew all the money he had and spent it and "I haven't a dime to pay taxes with." Witness stated that he understood the money withdrawn from the bank by proponent amounted to $50. Further, that testator had stated to him that proponent had been trying to get him to make a will, but that he hadn't decided what to do. On cross-examination the same witness testified that, at the time of the conversation, he considered testator had plenty of sense and was able to decide whether or not he wanted to make a will.
Robert J. Wimbish, called as a witness for contestants, testified that testator's will was executed in the office of Wimbish Wimbish, Ada, Okla., that Myrtle Irwin, proponent, accompanied testator to his office, but that it was his recollection that she was not present in the room when the will was executed.
C.J. Morton, a witness for contestants, testified that he was vice president of the First National Bank in Ada, that he knew deceased in his lifetime, and that the bank held a real estate mortgage on property owned by testator. Witness denied that he had ever told anyone that it would be necessary for testator to make a will to proponent in order for the bank to carry the mortgage.
While the testimony indicates considerable anxiety on the part of the proponent in having the deceased execute a will, it by no means proves such coercion or undue influence as to justify setting the will aside.
Under the provisions of section 9420, O. S. 1931, "undue influence" consists:
"First. In the use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him.
"Second. In taking an unfair advantage of another's weakness of mind, or
"Third. In taking a grossly oppressive and unfair advantage of another's necessities or distress."
Cotcha v. Ferguson, 165 Okla. 295, 25 P.2d 767.
In Canfield v. Canfleld, 167 Okla. 590, 31 P.2d 152, this court, in the syllabus, said:
"Undue influence, such as will invalidate a will, must be something which destroys the free agency of the testator at the time the instrument is made, and which, in effect, substitutes the will of another for that of the testator. It is not sufficient that the testator was influenced in the ordinary affairs of life or that he was surrounded by relatives and friends in confidential relationship with him at the time of its execution. Suspicion, conjecture, possibility, or guess that undue influence or fraud has induced a will, is not alone sufficient to defeat the probate of a will. Power, motive, and opportunity to exercise undue influence do not alone authorize the inference that such influence has in fact been exercised.
"If a wife by her industry and virtue, and by the assistance which she has rendered her husband, has gained such ascendancy over the mind of her husband; if she has by her faithfulness and good qualities secured his respect and esteem, so that her wish is a law to him, such influence, though it result in procuring a will in her favor to the total exclusion of all the relatives of the husband, would not amount to undue influence.
"The word 'undue,' when used to qualify 'influence', has the legal meaning of 'wrongful' so that 'undue influence' means a wrongful influence, but influence acquired through affection is not wrongful."
We have given careful consideration to cases cited from other jurisdictions. Some of these cases support contestants, others are not, in point, and still others are not in harmony with the views presented by contestants.
The case of Ginter v. Ginter, 79 Kan. 721, 101 P. 634, cited by contestants, is a well-reasoned case, replete with authorities, but upon facts probably as strongly in favor of contestant as are shown in the case at bar, the Supreme Court of Kansas affirmed the judgment of the trial court in sustaining a demurrer to the evidence introduced by contestant.
In the present case, for a number of years proponent, his niece, had lived in his household and had shared with the deceased in the work incident to his farm life.
Under these circumstances it is not surprising that proponent should become the chief beneficiary under the will. Again, the *Page 311 
estate of the deceased at the time of his death was of little value. At the time of the probate of the will the value of all the property bequeathed was fixed at only $1,200, with an incumbrance of approximately $400.
Testamentary competency to execute the will having been admitted in contestants' amendment to their petition, we conclude that the judgment of the trial court is correct, and it is affirmed.
OSBORN, C. J., BAYLESS, V. C. J., and CORN and HURST, JJ., concur.